B27 (Official Form 27) (12/09)

# UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re DANA S. COUNTRYMAN ,
      Debtor

Case No. 10- 38734-cgm
Chapter 7

## REAFFIRMATION AGREEMENT COVER SHEET

This form must be completed in its entirety and filed, with the reaffirmation agreement attached, within the time set under Rule 4008. It may be filed by any party to the reaffirmation agreement.

1. Creditor's Name: HUDSON VALLEY FEDERAL CREDIT UNION

2. Amount of the debt subject to this reaffirmation agreement:
   $ _____ on the date of bankruptcy    $ _____ to be paid under reaffirmation agreement
   962.48                                  962.48

3. Annual percentage rate of interest:    7.00 % prior to bankruptcy
   7.00 % under reaffirmation agreement ( X Fixed Rate ___ Adjustable Rate)

4. Repayment terms (if fixed rate): $ 168.28 per month for  60  months

5. Collateral, if any, securing the debt: Current market value: $ 3,125.00
   Description: 2000 HONDA Civic-4 Cyl. Coupe 2D EX
   VIN# 1HGEJ8244YL104794

6. Does the creditor assert that the debt is nondischargeable? ___Yes  x  No
(If yes, attach a declaration setting forth the nature of the debt and basis for the contention that the debt is nondischargeable.)

Debtor's Schedule I and J Entries    Debtor's Income and Expenses
                                            as Stated on Reaffirmation Agreement

7A. Total monthly income from $ 2994.58    7B. Monthly income from all    $ 4506
     Schedule I, line 16                          sources after payroll deductions

8A. Total monthly expenses    $ 4586.35    8B. Monthly expenses    $ 4506
     from Schedule J, line 18

9A. Total monthly payments on  $ Ø         9B. Total monthly payments on  $ Ø
     reaffirmed debts not listed on               reaffirmed debts not included in
     Schedule J                                   monthly expenses

                                                  10B. Net monthly income    $ 0
                                                  (Subtract sum of lines 8B and 9B from
                                                  line 7B. If total is less than zero, put the
                                                  number in brackets.)

B27 (Official Form 27) (12/09)                                                                                      Page 2

11.    Explain with specificity any difference between the income amounts (7A and 7B):
       We Are Recieving A Third Party Contribution of $1500.00 per month

12.    Explain with specificity any difference between the expense amounts (8A and 8B):
       N/A

       If line 11 or 12 is completed, the undersigned debtor, and joint debtor if applicable, certifies that any explanation contained on those lines is true and correct.

       _____                    _____
       Signature of Debtor (only required if              Signature of Joint Debtor (if applicable, and only
       line 11 or 12 is completed)                        required if line 11 or 12 is completed)

Other Information

☐   Check this box if the total on line 10B is less than zero. If that number is less than zero, a presumption of undue hardship arises (unless the creditor is a credit union) and you must explain with specificity the sources of funds available to the Debtor to make the monthly payments on the reaffirmed debt:


Was debtor represented by counsel during the course of negotiating this reaffirmation agreement?
       _X_ Yes              ____ No

If debtor was represented by counsel during the course of negotiating this reaffirmation agreement, has counsel executed a certification (affidavit or declaration) in support of the reaffirmation agreement?
       _X_ Yes              ____ No


                              **FILER'S CERTIFICATION**

       I hereby certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this Reaffirmation Agreement Cover Sheet.
                                            HANDEL & CARLINI, LLP
                                            _____
                                            Signature

                                            Anthony C. Carlini, Jr., Esq.
                                            Print/Type Name & Signer's Relation to Case

B240A (Form B240A) (04/10)

> Check one.
> ☐ Presumption of Undue Hardship
> ☒ No Presumption of Undue Hardship
> *See Debtor's Statement in Support of Reaffirmation, Part II below, to determine which box to check.*

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

In re __DANA S. COUNTRYMAN__,
         *Debtor*

Case No. __10-38734-cgm__

Chapter __7__

## REAFFIRMATION DOCUMENTS

Name of Creditor: __HUDSON VALLEY FEDERAL CREDIT UNION__

☒ Check this box if Creditor is a Credit Union

## PART I. REAFFIRMATION AGREEMENT

**Reaffirming a debt is a serious financial decision. Before entering into this Reaffirmation Agreement, you must review the important disclosures, instructions, and definitions found in Part V of this form.**

A. Brief description of the original agreement being reaffirmed: __AUTO LOAN__
   *For example, auto loan*

B. **AMOUNT REAFFIRMED:**    $ __926.48__

   The Amount Reaffirmed is the entire amount that you are agreeing to pay. This may include unpaid principal, interest, and fees and costs (if any) arising on or before __December 20, 2010__ which is the date of the Disclosure Statement portion of this form (Part V).

   *See the definition of "Amount Reaffirmed" in Part V, Section C below.*

C. The **ANNUAL PERCENTAGE RATE** applicable to the Amount Reaffirmed is __7.00__ %.

   *See definition of "Annual Percentage Rate" in Part V, Section C below.*

   This is a *(check one)* ☒ Fixed rate            ☐ Variable rate

If the loan has a variable rate, the future interest rate may increase or decrease from the Annual Percentage Rate disclosed here.

D. Reaffirmation Agreement Repayment Terms *(check and complete one)*:

[x]  $ 168.28 per month for __9__ months starting on _1/3/11_.

[ ]  Describe repayment terms, including whether future payment amount(s) may be different from the initial payment amount.

E. Describe the collateral, if any, securing the debt:

   Description:            2000 HONDA Civic-4 Cyl. Coupe 2D EX
   Current Market Value    $ 3,125.00
                           VIN# 1HGEJ8244YL104794

F. Did the debt that is being reaffirmed arise from the purchase of the collateral described above?

[x] Yes. What was the purchase price for the collateral?    $ 8,337.00

[ ] No. What was the amount of the original loan?           $

G. Specify the changes made by this Reaffirmation Agreement to the most recent credit terms on the reaffirmed debt and any related agreement:

|  | Terms as of the Date of Bankruptcy | Terms After Reaffirmation |
|---|---|---|
| Balance due *(including fees and costs)* | $962.48 | $ 962.48 |
| Annual Percentage Rate | 7.00 % | 7.00 % |
| Monthly Payment | $168.28 | $ 168.28 |

H. [ ] Check this box if the creditor is agreeing to provide you with additional future credit in connection with this Reaffirmation Agreement. Describe the credit limit, the Annual Percentage Rate that applies to future credit and any other terms on future purchases and advances using such credit:

## PART II.    DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

A. Were you represented by an attorney during the course of negotiating this agreement?

   Check one.   [x] Yes      [ ] No

B. Is the creditor a credit union?

   Check one.   [x] Yes      [ ] No

C. If your answer to EITHER question A. or B. above is "No," complete 1. and 2. below.

1. Your present monthly income and expenses are:

   a. Monthly income from all sources after payroll deductions
   (take-home pay plus any other income)                                    $ 4500

   b. Monthly expenses (including all reaffirmed debts except
   this one)                                                                 $ ~~4282.60~~ 4331.72

   c. Amount available to pay this reaffirmed debt (subtract b. from a.)    $ ~~$$$$~~ 168.28

   d. Amount of monthly payment required for this reaffirmed debt           $ 168.28

   *If the monthly payment on this reaffirmed debt (line d.) **is greater than** the amount you have available to pay this reaffirmed debt (line c.), you must check the box at the top of page one that says "Presumption of Undue Hardship." Otherwise, you must check the box at the top of page one that says "No Presumption of Undue Hardship."*

2. You believe that this reaffirmation agreement will not impose an undue hardship on you or your dependents because:

   Check one of the two statements below, if applicable:

   [✓] You can afford to make the payments on the reaffirmed debt because your monthly income is greater than your monthly expenses even after you include in your expenses the monthly payments on all debts you are reaffirming, including this one.

   [ ] You can afford to make the payments on the reaffirmed debt even though your monthly income is less than your monthly expenses after you include in your expenses the monthly payments on all debts you are reaffirming, including this one, because:




   Use an additional page if needed for a full explanation.

D. If your answers to BOTH questions A. and B. above were "Yes," check the following statement, if applicable:

   [✓] You believe this Reaffirmation Agreement is in your financial interest and you can afford to make the payments on the reaffirmed debt.

*Also, check the box at the top of page one that says "No Presumption of Undue Hardship."*

## PART III. CERTIFICATION BY DEBTOR(S) AND SIGNATURES OF PARTIES

I hereby certify that:

(1) I agree to reaffirm the debt described above.

(2) Before signing this Reaffirmation Agreement, I read the terms disclosed in this Reaffirmation Agreement (Part I) and the Disclosure Statement, Instructions and Definitions included in Part V below;

(3) The Debtor's Statement in Support of Reaffirmation Agreement (Part II above) is true and complete;

(4) I am entering into this agreement voluntarily and am fully informed of my rights and responsibilities; and

(5) I have received a copy of this completed and signed Reaffirmation Documents form.

SIGNATURE(S) (If this is a joint Reaffirmation Agreement, both debtors must sign.):

Date 1/7/11       Signature _____
                  DANA S. COUNTRYMAN      Debtor
Date _____    Signature _____
                           Joint Debtor, if any

**Reaffirmation Agreement Terms Accepted by Creditor:**

Creditor   HUDSON VALLEY FEDERAL      112 Delafield Street, Suite 200
           CREDIT UNION                Poughkeepsie, New York 12601
             Print Name                         Address

Anthony C. Carlini, Jr., Esq.         _____    2/2/11
  Print Name of Representative            Signature        Date

## PART IV. CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY)

*To be filed only if the attorney represented the debtor during the course of negotiating this agreement.*

I hereby certify that: (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐ A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

*Check box, if the presumption of undue hardship box is checked on page 1 and the creditor is not a Credit Union.*

Date 1/13/11   Signature of Debtor's Attorney _____

           Print Name of Debtor's Attorney   Thomas Genova, Esq.

# PART V. DISCLOSURE STATEMENT AND INSTRUCTIONS TO DEBTOR(S)

Before agreeing to reaffirm a debt, review the terms disclosed in the Reaffirmation Agreement (Part I above) and these additional important disclosures and instructions.

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps, which are detailed in the Instructions provided in Part V, Section B below, are not completed, the Reaffirmation Agreement is not effective, even though you have signed it.

### A.  DISCLOSURE STATEMENT

1. **What are your obligations if you reaffirm a debt?** A reaffirmed debt remains your personal legal obligation to pay. Your reaffirmed debt is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Your obligations will be determined by the Reaffirmation Agreement, which may have changed the terms of the original agreement. If you are reaffirming an open end credit agreement, that agreement or applicable law may permit the creditor to change the terms of that agreement in the future under certain conditions.

2. **Are you required to enter into a reaffirmation agreement by any law?** No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments that you agree to make.

3. **What if your creditor has a security interest or lien?** Your bankruptcy discharge does not eliminate any lien on your property. A "lien" is often referred to as a security interest, deed of trust, mortgage, or security deed. The property subject to a lien is often referred to as collateral. Even if you do not reaffirm and your personal liability on the debt is discharged, your creditor may still have a right under the lien to take the collateral if you do not pay or default on the debt. If the collateral is personal property that is exempt or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the collateral, as the parties agree or the court determines.

4. **How soon do you need to enter into and file a reaffirmation agreement?** If you decide to enter into a reaffirmation agreement, you must do so before you receive your discharge. After you have entered into a reaffirmation agreement and all parts of this form that require a signature have been signed, either you or the creditor should file it as soon as possible. The signed agreement must be filed with the court no later than 60 days after the first date set for the meeting of creditors, so that the court will have time to schedule a hearing to approve the agreement if approval is required. However, the court may extend the time for filing, even after the 60-day period has ended.

5. **Can you cancel the agreement?** You may rescind (cancel) your Reaffirmation Agreement at any time before the bankruptcy court enters your discharge, or during the 60-day period that begins on the date your Reaffirmation Agreement is filed with the court, whichever occurs later. To rescind (cancel) your Reaffirmation Agreement, you must notify the creditor that your Reaffirmation Agreement is rescinded (or canceled). Remember that you can rescind the agreement, even if the court approves it, as long as you rescind within the time allowed.

6. **When will this Reaffirmation Agreement be effective?**

   a. **If you *were* represented by an attorney during the negotiation of your Reaffirmation Agreement and**

      i. **if the creditor is not a Credit Union,** your Reaffirmation Agreement becomes effective when it is filed with the court unless the reaffirmation is presumed to be an undue hardship. If the Reaffirmation Agreement is presumed to be an undue hardship, the court must review it and may set a hearing to determine whether you have rebutted the presumption of undue hardship.

      ii. **if the creditor is a Credit Union,** your Reaffirmation Agreement becomes effective when it is filed with the court.

   b. **If you *were not* represented by an attorney during the negotiation of your Reaffirmation Agreement,** the Reaffirmation Agreement will not be effective unless the court approves it. To have the court approve your agreement, you must file a motion. See Instruction 5, below. The court will notify you and the creditor of the hearing on your Reaffirmation Agreement. You must attend this hearing, at which time the judge will review your Reaffirmation Agreement. If the judge decides that the Reaffirmation Agreement is in your best interest, the agreement will be approved and will become effective. However, if your Reaffirmation Agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home, you do not need to file a motion or get court approval of your Reaffirmation Agreement.

7. **What if you have questions about what a creditor can do?** If you have questions about reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement. If you do not have an attorney helping you, you may ask the judge to explain the effect of this agreement to you at the hearing to approve the Reaffirmation Agreement. When this disclosure refers to what a creditor "may" do, it is not giving any creditor permission to do anything. The word "may" is used to tell you what might occur if the law permits the creditor to take the action.

B. **INSTRUCTIONS**

1. Review these Disclosures and carefully consider your decision to reaffirm. If you want to reaffirm, review and complete the information contained in the Reaffirmation Agreement (Part I above). If your case is a joint case, both spouses must sign the agreement if both are reaffirming the debt.

2. Complete the Debtor's Statement in Support of Reaffirmation Agreement (Part II above). Be sure that you can afford to make the payments that you are agreeing to make and that you have received a copy of the Disclosure Statement and a completed and signed Reaffirmation Agreement.

3. If you were represented by an attorney during the negotiation of your Reaffirmation Agreement, your attorney must sign and date the Certification By Debtor's Attorney (Part IV above).

4. You or your creditor must file with the court the original of this Reaffirmation Documents packet and a completed Reaffirmation Agreement Cover Sheet (Official Bankruptcy Form 27).

5. *If you are not represented by an attorney, you must also complete and file with the court a separate document entitled "Motion for Court Approval of Reaffirmation Agreement" unless your Reaffirmation Agreement is for a consumer debt secured by a lien on your real property, such as your home. You can use Form B240B to do this.*

C. **DEFINITIONS**

1. **"Amount Reaffirmed"** means the total amount of debt that you are agreeing to pay (reaffirm) by entering into this agreement. The total amount of debt includes any unpaid fees and costs that you are agreeing to pay that arose on or before the date of disclosure, which is the date specified in the Reaffirmation Agreement (Part I, Section B above). Your credit agreement may obligate you to pay additional amounts that arise after the date of this disclosure. You should consult your credit agreement to determine whether you are obligated to pay additional amounts that may arise after the date of this disclosure.

2. **"Annual Percentage Rate"** means the interest rate on a loan expressed under the rules required by federal law. The annual percentage rate (as opposed to the "stated interest rate") tells you the full cost of your credit including many of the creditor's fees and charges. You will find the annual percentage rate for your original agreement on the disclosure statement that was given to you when the loan papers were signed or on the monthly statements sent to you for an open end credit account such as a credit card.

3. **"Credit Union"** means a financial institution as defined in 12 U.S.C. § 461(b)(1)(A)(iv). It is owned and controlled by and provides financial services to its members and typically uses words like "Credit Union" or initials like "C.U." or "F.C.U." in its name.

# Hudson Valley Federal Credit Union

**CLOSED END NOTE, SECURITY AGREEMENT AND FEDERAL DISCLOSURE STATEMENT**

CREDIT UNION COPY

497-1251187

159 BARNEGAT ROAD, POUGHKEEPSIE, NY 12601 (800) 468-3011

Purpose of loan: _____

☐ VARIABLE RATE   ☒ FIXED RATE

In this Note, Security Agreement and Federal Disclosure Statement, the words I, Me, and My mean each and all of those who endorse or negotiate the check below. The words You, Your and Yours mean HUDSON VALLEY FEDERAL CREDIT UNION. The word "saving(s)" means "share(s)". The terms on the reverse side are part of this Agreement.

Borrower(s) Name and Address: DANA S COUNTRYMAN
398 PLAINS RD
WALLKILL, NY 12589

Member Number/Account: [redacted]

Date of Loan: 04 OCT 2006

## FEDERAL DISCLOSURE STATEMENT

| ANNUAL PERCENTAGE RATE<br>The cost of my credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost me. | AMOUNT FINANCED<br>The amount of credit provided to me or on my behalf. | TOTAL OF PAYMENTS<br>The amount I will have paid after I have made all payments as scheduled. |
|---|---|---|---|
| 7.000% | $1,579.10 | $8,337.00 | $10,097.33 |

My payment schedule will be:

| Number of Payments | Amount of each Payment | When payments are due |
|---|---|---|
| 59 | $168.28 | MONTHLY, BEGINNING 04 NOV 06 |
| 1 | $168.81 | FINAL PAYMENT 04 OCT 11 |

* If I choose the variable rate, these figures are subject to change.
* If applicable, the APR does not reflect the effect of the required deposit.

I am giving you a security interest in the following property:
2000 HONDA CIVIC 1HGEJ8244YL104794

PENALTY FOR LATE PAYMENT : 5% of Payment

**HVFCU CONFIDENTIAL**

**Prepayment:** If I pay off my loan early, I will not have to pay a penalty.
**Property Insurance:** I may obtain property insurance from anyone I want that is acceptable to you.
**Late Charge:** If a payment is 10 or more days late, I will be charged 5% of the payment.
**Cross Collateral Clause:** I am giving you a security interest in the property securing repayment of this loan as well as any other obligation owed to you now or in the future.
**Annual Percentage Rate:** The Annual Percentage Rate (APR) appearing on the face of this Note may be decreased by 0.25%, if the payments are automatically transferred from my account. This reduction does not affect the amount of my monthly payment. If I default or discontinue the automatic transfer, I will no longer be eligible for the 0.25% reduction and my Annual Percentage Rate will revert to that which is shown on the face of this Note. The decrease/increase of the Annual Percentage Rate will take the form of fewer or more payments of the same amount.
**Variable Rate:** If I choose the variable rate, the following disclosures will also apply:
The Annual Percentage Rate may increase/decrease during the term of this transaction if your Index, the average of the 26 week Treasury Bill Rate for the previous calendar quarter, increases/decreases. The rate will not increase/decrease more than once every calendar quarter. Any increase/decrease will take the form of more or fewer payments of the same amount. However, if my regular payment were ever less than the finance charges due and payable in a given month, my monthly payment may have to be increased. Example: If my loan were for $5,000 at 15% for 48 months and the rate increased to 17% in 3 months, I would have to make 3 additional payments. Each calendar quarter you will calculate a new index rate and round it to the nearest 1/4 of 1%. The new Index rate is added to the margin of N/A % to calculate the Annual Percentage Rate. You will not accumulate unused index rate increases or decreases. The new rate will become effective on the first day of the calendar quarter and will apply to all balances outstanding. The maximum Annual Percentage Rate will not exceed 18%.

See the Note and Security Agreement for any additional information about security interests, nonpayment, default and any required payment in full before the scheduled date.

**ITEMIZATION OF AMOUNT FINANCED** $8,337.00

Amount given to me directly of: $0.00
Amount paid on my account of: $0.00
Prepaid Finance charge of:

Amounts paid to others on my behalf:

$8,337.00 DANA COUNTRYMAN, MICHELLE COUNTRYMAN & QUICKWAY EXOTIC AUTO SALES

Credit Insurance is voluntary and is not a condition for approval of this loan. This Insurance may be cancelled at any time. The cost of SINGLE LIFE Insurance is $181.23e.
The amount of any Credit Insurance is reflected in the total of payments shown above.

If an amount is marked with an asterisk (*), we will be retaining a portion of the amount.

**NOTE AND SECURITY AGREEMENT**

**Endorsement of Check:** By endorsing or negotiating the check below, I/We acknowledge receipt of proceeds, the Note, Security Agreement and Federal Disclosure Statement, grant of security interest and agreement to be bound by the terms thereof including Credit Insurance as elected. I/We consent to the form of endorsement and to negotiation by others.

NOTICE: SEE OTHER SIDE FOR ADDITIONAL TERMS

PAGE 1 OF 2

THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND AND MICROPRINTING IN THE SIGNATURE LINE

HVFCU Confidential Rev. 1/05

---

2219

# Hudson Valley Federal Credit Union

159 BARNEGAT ROAD, POUGHKEEPSIE, NY 12601 (800) 468-3011

69-35 / 519

497-1251187

WARNING - DO NOT CASH UNLESS YOU CAN VERIFY THIS NO. BLEEDS THRU A PINK COLOR TO THE BACK OF THIS CHECK

TO THE ORDER OF: DANA COUNTRYMAN, MICHELLE COUNTRYMAN & QUICKWAY EXOTIC AUTO

PAY: EIGHT THOUSAND THREE HUNDRED AND THIRTY SEVEN DOLLARS ONLY

DATE: 04 OCT 06

$8,337.00

DANA COUNTRYMAN, MICHELLE COUNTRYMAN & QUICKWAY EXOTIC AUTO SALES
398 PLAINS RD
WALLKILL, NY - 12589

PAYABLE THRU One Valley Bank, Charleston, WV

**NON NEGOTIABLE**

AUTHORIZED SIGNATURE

WARNING: Original document has LineMark™ lines in the paper that change from light to dark in reflected to transmitted light.

⑆051900353⑆00497   1251187⑈

## NOTE AND SECURITY AGREEMENT (Continued)

**Promise to Pay:** To repay my loan, I jointly and severally, promise to pay to the credit union or to the credit union's order, the "Total of Payments" (shown on the reverse) in lawful money of the United States. I will pay this sum at a credit union office as set forth in the payment schedule (shown on the reverse). I understand that each payment is applied first to collection costs and late charges, if any, then to Finance Charge, and then to the Amount Financed.

**Acceleration:** If I default (see below), the credit union may demand payment of the unpaid balance, Finance Charges, late charges and collection costs, if any. I understand that Finance Charges at the Annual Percentage Rate shown on the reverse will continue to accrue until I repay my entire loan.

**Prepayment or Irregular Payments:** Though I need only pay the fixed installments, I understand I have the right to repay my entire loan at any time without penalty. I also understand I will only be charged Finance Charges to the date I repay my entire loan. I may make larger payments without penalty and this may reduce the total amount of Finance Charges I will pay. Any partial payment of my loan will not delay my next scheduled due date(s). I understand any payment that (a) delays or (b) accelerates the reduction of my loan balance will (a) increase or (b) decrease my Finance Charges.

**Last Payment:** I give the credit union permission to deposit the balance of my last payment, if any, to my savings account.

**Default:** I will be in default if: 1) I do not pay my installments on time; 2) I fail to live up to any of the terms and conditions of this Note and Security Agreement; 3) my creditworthiness is impaired; 4) the value of the collateral is impaired; 5) I die, become insolvent, or are the subject of bankruptcy or receivership proceedings; 6) there is a change of ownership of all or any part of the collateral; 7) I have made a misrepresentation in connection with the loan application and/or this Agreement; 8) I am in default on any other loan with you; 9) the collateral or any of my money in your possession is seized or attached by legal process; or 10) should additional security be required and I fail to provide such additional security within ten (10) days of demand. If I am in default, the credit union may terminate this Note and Security Agreement and demand immediate payment of my entire loan. I understand that Finance Charges at the Annual Percentage Rate shown on the reverse and late charges permitted under this Agreement will continue to accrue until I repay my entire loan. I also agree to pay my collection costs, attorney's fees and court costs. The credit union has the right to reposses, sell and apply the security to the debt due under this Note and Security Agreement and any other debts I may owe you.

**Late Charges:** If I do not pay them directly, my late charges will be deducted from my deposit and/or transaction account(s).

**Lien on Savings\Security Interest:** If I am in default on any financial obligation to you, I understand that Federal Law permits you to enforce a statutory lien on all accounts in which I have an ownership interest (except IRA or other retirement accounts) by transferring funds from these accounts to satisfy my obligations. I further understand that you may restrict my access to these accounts.

**Collection Costs:** If I am in default and the credit union demands full payment, I understand that I will be charged a Finance Charge on the unpaid Amount Financed until I repay the loan. I also agree to pay late charges, my collection costs, reasonable attorney's fees and court costs. If I am in default, I also agree to continue to pay you interest on the unpaid balance at your then prevailing unsecured fixed rate.

**Change of Name, Address, Employment:** I understand I must notify the credit union after any change in my name, address or employment.

**Business Loan:** If this loan qualifies as a Business Loan, then I agree to provide this credit union financial statements, tax records, and such other financial information at least annually within 30 days upon request, or at such times and in such form as the credit union may request.

**Delay in Enforcement:** You can delay enforcing any of your rights under this Note without losing them.

**Governing Law:** I understand and agree that this agreement is made in New York and shall be governed by the laws of the State of New York to the extent that New York law is not inconsistent with controlling Federal law. I also understand that New York's choice of law rules shall not be applied if that would result in the application of non-New York law.

**Liability of Parties:** Each person who signs, signs as a maker, agrees to be individually and jointly obligated to pay my loan in accordance with the terms and conditions of this Note, Security Agreement and Federal Disclosure Statement. If I sign this Note as a co-signer, I agree to be equally responsible with the borrower, although you may sue either of us. You do not have to notify me that this Note has not been paid. You can change the terms of payment and release any security without notifying or releasing me from responsibility of this Note. You shall not be compelled to resort first to the security pledged herewith, but may enforce payment hereof against any or all of us.

**Federal Disclosure Statement:** The terms and conditions of the Federal Disclosure Statement are incorporated herein by reference.

## ADDITIONAL SECURITY AGREEMENT TERMS

If I am giving the credit union a security interest (see reverse), my loan is also subject to the following additional terms.

**Security Agreement:** If I am giving the credit union a security interest (shown on the reverse), I understand that the security interest is governed by the Uniform Commercial Code and will cover the property described on the reverse, if any. I understand that my loan is also secured by any insurance proceeds or any insurance premium refunds. I also understand and agree to the additional security agreement terms set forth below.

**Future Advances:** I understand the Security Agreement will secure any future advances made by the credit union, and that any future advances will be added to the "Amount Financed" of the loan and will accrue Finance Charges. The term "future advances" includes, but is not limited to money advanced to me, money advanced to third parties at my direction, costs, fees, or other monies advanced by the credit union to protect their interest in the security.

**Status of Security:** I promise that I own the security and that there are no liens or any other claims, other than those of record on the date of this loan, against the security other than the credit union's. I agree not to sell or lease the security, or give it as security to anyone else, until the loan has been paid in full.

**Property Insurance (Other than Stocks, Bonds or Shares):** I promise to maintain property insurance, naming the credit union as Loss Payee and fully insuring the security described in the Federal Disclosure Statement on the reverse side against loss by fire, theft, and collision and to provide "all risks" hull insurance in the case of aircraft or boats and accessories thereto when applicable and flood insurance if the Security is a manufactured home which will be placed on property located in a flood hazard area. I may provide the required property insurance through an existing policy or by a policy I independently obtain and pay for from a person of my choosing. I agree to deliver a copy of the insurance policy to the credit union prior to receipt of any funds. If I do not keep this insurance, the credit union may obtain this insurance and add its costs to my loan and I agree to pay for it, or the credit union may declare the Note and Security Agreement in default. Any amount spent by the credit union for insurance will be added to the "Amount Financed" of the loan and will accrue Finance Charges.

**Preservation of Security (Other than Stocks, Bonds or Shares):** I promise to take good care of the security and to pay all taxes and liens upon it. I also agree to perform all acts which I deem necessary to make the credit union's security interest enforceable. If the security is movable, I also agree to inform the credit union immediately if the security is to be moved from my address listed on the reverse side and I will not take the security out of the state of my residence for more than 30 days without the credit union's written consent. I will not use the security for any unlawful purpose. I further agree not to allow any liens to exist against it other than the credit union's, and I agree to pay the costs of protecting the security, including reasonable attorney's fees. I understand that if I do not do these things, the Note and Security Terms will be in default.

**Stocks as Security:** If stocks are pledged as security for this loan, a list of stocks is shown on the reverse. I also understand that I may not use the loan proceeds for the purchase of stocks or bonds. If during the term of the loan, the value of the stock held as collateral decreases and causes the loan-to-stock value to increase to greater than 85%, I understand that I will have five business days from the date of notification to furnish either additional funds or additional security acceptable to the credit union to re-establish the maximum collateral equity position. If I do not re-establish the maximum collateral equity position, I authorize you to sell my stock and apply the proceeds of the sale to my outstanding stock loan.

**Savings as Security:** If savings are pledged as the security for this loan, I understand that I must keep a sum equal to my unpaid balance on deposit with the credit union until I repay my entire loan.

**Default:** If I am in default, the credit union may demand immediate payment of my entire loan. I understand that the credit union also has other rights, including the right without prior notice to me, to retake the security and after giving notice of sale as required by law, to sell the security in a reasonable manner. I understand if the amount the credit union receives at the sale does not pay my unpaid balance, Finance Charges, late charges and the costs of protecting, retaking, repairing, storing and selling the security and collection costs, reasonable attorney's fees, and court costs, that I agree to pay any remaining amount as permitted by law.

## INSURANCE DISCLOSURE AND AGREEMENT

In this Agreement the words "I","me"and "my" mean each and all of those who sign this Agreement. The "credit union", means Hudson Valley Federal Credit Union.

**Insurance:** I may obtain property insurance from anyone I want that is acceptable to the credit union. I promise to maintain property insurance, naming the credit union as Loss Payee and fully insuring the property described in the Truth in Lending Disclosure Statement against loss by fire, theft, and collision and to provide "all risks" hull insurance in the case of aircraft or boats and accessories thereto when applicable. I may provide the required property insurance through an existing policy or by a policy I independently obtain and pay for from a person of my own choosing. The amount of the deductible must not exceed $500. I agree to deliver a copy of the insurance policy to the credit union prior to receipt of any funds. If I do not keep this insurance, the credit union may obtain this insurance and add its cost to my loan and I agree to pay for it, or the credit union may declare my Loan Agreement and Security Agreement in default. Any amount spent by the credit union for insurance will, at the credit union's option be added to the Amount Financed of the loan and will accrue Finance Charges at the Annual Percentage Rate disclosed in the Truth in Lending Disclosure Statement.

**Agreement to Provide Insurance:** I understand and acknowledge that my loan agreement provides that I must maintain property insurance, acceptable to the credit union, naming the credit union as "loss payee" and fully insuring the property described above against loss by fire, theft and collision, and "all risks" hull insurance in the case of aircraft and boats. I understand that I am also required, pursuant to the terms of my loan agreement, to deliver a copy of the insurance policy to the credit union prior to receipt of any funds.

I understand that if I do not maintain the required insurance, the credit union may, at its election, procure a policy which protects the credit union's interest. The cost of the premium will, at the credit union's option, be added to my loan balance and will accrue interest at the rate disclosed on my loan agreement. I understand that this insurance is without benefit to me individually, but is primarily for your protection.

If insurance is procured by the credit union, I authorize the credit union to either extend the repayment period of my loan, or increase my monthly payment amount.

I authorize the credit union to forward to its insurance service all information necessary for verification of adequate insurance coverage.

HVFCU Confidential

PAGE 2 OF 2